UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES BURRIS, MELODY CUGNON,
and those others that are similarly situated,

      Plaintiffs,

v.                             Case No. 3:12cv521-MCR-CJK

JAMES W. GREEN and
FISHERMAN'S CORNER, LLC, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on defendant Victor Franck's Motion to Set Aside Clerk's Default and Motion to Dismiss Defendant Victor C. Franck from Third Amended Complaint for Lack of Personal Jurisdiction. (Doc. 296).[1] Plaintiffs responded in opposition. (Doc. 299). Thereafter, the court permitted the parties to engage in discovery related to the court's jurisdiction over defendant Franck. (Doc. 306). Following the conclusion of discovery, both Franck and plaintiffs supplemented their respective arguments. (Docs. 309, 310).

The matter has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and N.D. Fla.

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

Loc. R. 72.3.  Upon careful consideration of the record, the parties' submissions, and the relevant law, the undersigned concludes defendant Franck's Motion to Set Aside Clerk's Default and Motion to Dismiss Defendant Victor C. Franck from Third Amended Complaint for Lack of Personal Jurisdiction should be granted because plaintiffs have failed to establish this court can exercise jurisdiction over Franck.

## BACKGROUND

Plaintiffs initiated this case on October 31, 2012, by filing a three-count complaint against Fisherman's Corner, LLC (which operated Fisherman's Corner Restaurant) and its owner, James Green, alleging (1) failure to pay minimum wages under the Florida Minimum Wage Act ("FMW"), Fla. Stat. § 448.110; (2) retaliatory discharge; and (3) failure to pay overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA").  (Doc. 1).  As to the FMW claim, plaintiffs sought to certify a class of all "tipped employees" who were not paid the applicable minimum wage or tip credit at the restaurant.  (*Id.*, p. 7-9).

On June 6, 2014, plaintiffs filed the third amended complaint, the operative pleading in this action.  (Doc. 141).  In addition to the claims raised in the initial complaint, the third amended complaint added claims related to the allegedly fraudulent transfer of assets from Fisherman's Corner, LLC, to Fisherman's Corner Restaurant, LLC.  (*Id.*).  Victor Franck is identified as a defendant "both individually and as a managing member of Perdido Key Investments, LLC and as managing

member of Fisherman's Corner Restaurant, LLC." (*Id.*, p. 5).  Counts five, six, seven, eight, and nine of the eleven-count complaint assert liability against Franck individually.  Count five alleges Franck and the other five defendants fraudulently transferred assets from Fisherman's Corner, LLC, to Fisherman's Corner Restaurant, LLC.  (*Id.*, p. 28-29).  Count six asserts successor liability against every defendant except Fisherman's Corner, LLC.  (*Id.*, p. 30-32).  Counts seven, eight, and nine claim Franck conspired with various combinations of defendants to transfer assets from Fisherman's Corner, LLC, to Fisherman's Corner Restaurant, LLC, and prevent plaintiffs from recovering damages in this action.[2]  (*Id.*, p. 32-42).

Plaintiffs effectuated service of process on Franck under Florida's substituted service statutes.  (Docs. 242, 244, 249, 251-53).  On August 11, 2015, Franck filed a motion to quash service of process (doc. 254), which the court denied (284).[3]  The court ordered Franck to answer or otherwise respond to the third amended complaint within twenty-one days of November 5, 2015.  (Doc. 284).  Because Franck failed to file an answer within the allotted time, plaintiffs moved for entry of default.  (Doc. 289).  On December 2, 2015, default was entered against Franck.  (Docs. 291, 292).

---

[2] Count seven alleges a conspiracy between Franck and Fisherman's Corner, LLC.  Count eight alleges a conspiracy between Franck and James Green.  Count nine alleges a conspiracy between Franck and Catherine Bergstrom.  (Doc. 141, p. 32-42).

[3] Franck's first motion to quash service of process (doc. 175) was granted on June 1, 2015, because plaintiffs failed to comply with the provisions of Florida's substituted service of process statute. (Docs. 227, 234).

Case No. 3:12cv521-MCR-CJK

On December 18, 2015, Franck filed the present Motion to Set Aside Clerk's Default and Motion to Dismiss Defendant Victor C. Franck from Third Amended Complaint for Lack of Personal Jurisdiction. (Doc. 296). Plaintiffs responded in opposition on January 8, 2016, (doc. 299) and the court subsequently permitted the parties to engage in discovery concerning the court's jurisdiction over defendant Franck. (Doc. 306). After discovery concluded, both Franck and plaintiffs supplemented their respective arguments. (Docs. 309, 310).

## FACTS

Victor Franck currently resides at 7318 Augusta Pines Drive in Spring, Texas. (Doc. 310-1, p. 7). He has never been a resident of Florida (doc. 296, p. 11), and plaintiffs' evidence does not establish Franck was ever in Florida. Franck is the sole member and "100 percent" owner of Perdido Key Investments, LLC ("PKI"), a Wyoming company formed on April 5, 2013. (Doc. 310-1, p. 33-34; doc. 310-2, p. 5-7). Franck and Catherine Greene are the named managers of PKI. (Doc. 310-1, p. 34). Franck states PKI conducts no operations and "has no activity." (Doc. 310-1, p. 35). PKI formed Fisherman's Corner Restaurant, a Florida limited liability company ("FCR").[4] PKI is the sole member and manager of FCR. (Doc. 296, p. 11; doc. 310-2, p. 4). Franck, on behalf of PKI, electronically signed FCR's Articles

---

[4] Franck's home address of 7318 August Pines Drive, Spring, Texas 77389 serves as FCR's principal office and mailing address. (Doc. 310-2, p. 3).

Case No. 3:12cv521-MCR-CJK

of Organization on May 21, 2013. (Doc. 310-2, p. 4). PKI's sole asset is FCR, which (after July 1, 2013) operated Fisherman's Corner Restaurant in Escambia County, Florida; FCR's only asset is the restaurant. (Doc. 310-1, p. 32-33).

Codefendant James Green owned Fisherman's Corner, LLC ("FC"), the entity previously responsible for operating Fisherman's Corner Restaurant. (Doc. 310-1, p. 31). In November 2010, Franck agreed to personally provide James Green and FC with a $100,000 revolving line of credit under the provisions of the Security Agreement for Revolving Line of Credit ("loan agreement"). (Doc. 310-1, p. 53; doc. 310-3). As collateral for the loan, Franck received a security interest in all the assets of FC. (Doc. 310-1, p. 55). The loan agreement is governed by Texas law. (Doc. 299-3, p. 16). FC periodically sent checks to Franck to repay monies loaned under the agreement. (Doc. 310-4, p. 2-5).

On July 1, 2013—after plaintiffs' initiated this action—ownership and operational control of Fisherman's Corner Restaurant was transferred from FC to FCR through an Asset Purchase Agreement. (Doc. 310-5, p. 2-17; doc. 310-1, p. 59-60). Franck signed the Agreement on behalf of FCR in his capacity as manager of PKI. (Doc. 310-5, p. 12, 17). FC sold its business "because [it] could not afford to pay its debts and obligations." (Doc. 310-1, p. 63; doc. 310-5, p. 2). The Asset Purchase Agreement provided that FCR would not assume any of the liabilities of FC, with the exception of (1) the loan agreement between FC and Franck; and (2) a

potential a claim against FC by William E. Brown, Jr.  (Doc. 310-5, p. 3).  Franck signed the Florida Division of Hotels and Restaurants Application for Public Food Service Establishment License on behalf of FCR and mailed the document to Tallahassee from Texas.  (Doc. 310-9, p. 2-4).  After ownership and operational control were transferred to FCR, Franck continued to loan money to FCR under the agreement.  (Doc. 310-1, p. 60-62, 86-87).  James Green managed the day-to-day operations of FCR, and Cathy Green signed the checks.  (Doc. 310-1, p. 76).

In addition, Franck owns "50 percent of the membership interest" in Green Acres Development, a Florida Limited Liability Company ("Green Acres").  (Doc. 310-1, p. 23, 26).  For over ten years, Green Acres has owned real estate, including properties in Escambia County and Santa Rosa County.  (Doc. 310-1, p. 24-25).  Franck and James Green are the managers of Green Acres; as a manager, Franck receives reports from companies (NAI Halford and Tern Key Realty) who oversee and maintain the properties.  (Doc. 310-1, p. 25-26).  Franck also previously owned fifty percent of Perdido Bay Holdings, a Nevada company set up to own a seafood business based in Florida called Perdido Key Seafood, LLC.  (Doc. 310-1, p. 40-44).  The seafood business is no longer in operation.  (Doc. 310-1, p. 41).

## DISCUSSION

If the court lacks personal jurisdiction over defendant Franck, the entry of default must be set aside.  *See Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860,

864 (11th Cir. 2007) ("A defaulted defendant also can defend by challenging the jurisdiction of the court to enter judgment against him.  Thus, for example, a defendant in default still can . . . contest the court's exercise of personal jurisdiction over him.").  Accordingly, the personal jurisdiction issue will be addressed first.

Motion to Dismiss for Lack of Personal Jurisdiction

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'"  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (*quoting United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  "When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"  *Id.* (*quoting Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

A federal court undertakes a two-step inquiry to determine whether personal jurisdiction exists: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *Mazer*, 556 F.3d at 1274.  Florida's long-arm statute must be "strictly construed," *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996), and provides in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this

subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state.

3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.

Fla. Stat. § 48.193(1)(a)1-3.

"In *Doe v. Thompson*, 620 So. 2d 1004, 1005 (Fla. 1993), [the Supreme Court of Florida] addressed the concept of an individual acting 'personally' in-state as required by section 48.193[,]" finding "the defendant did not act 'personally' within the state when the employee did not act physically in Florida, 'did not personally operate a business in Florida, did not commit a tortious act in Florida, or cause injury in Florida.'" *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012) (*quoting Doe*, 620 So. 2d at 1005-06); *see also Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (holding a defendant's physical presence in Florida is not required to "commit a tortious act" in the state).  In addition, Florida law provides that a "defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).

A.      Specific Personal Jurisdiction

Plaintiffs cite multiple subsections of Florida's long-arm statute that provide for specific personal jurisdiction over nonresident defendants. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) (defining specific personal jurisdiction as "jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum").   Under § 48.193(1), a plaintiff's causes of action must arise from the defendant's contacts with Florida.  In the complaint, plaintiffs seek to hold Franck liable in count five (fraudulent transfer of property), count six (successor liability), and counts seven, eight, and nine (conspiracy to commit fraudulent transfer of property).  In an order dated March 16, 2015, the District Court found the fraudulent transfer and successor liability counts failed to state a claim for relief against the other individual defendants.[5]  (Doc. 214, p. 7-13).  Thus, the only viable causes of action involving defendant Franck allege he conspired with various codefendants to

_____

[5] The court noted a successor liability claim "is, by its very nature, a claim against the [successor] entity, rather than an LLC's managing member."  (Doc. 214, p. 8).  As to the fraudulent transfer claim, the court found "[i]n effect, the allegation against the non-transferor and non-transferee Defendants, including Bergstrom, Green, and Perdido Key Investments, LLC, is that they aided and abetted the transfer; yet, Florida law clearly provides that aiders and abettors of allegedly fraudulent transfers are not proper parties to such claims."  (Doc. 214, p. 12).

fraudulently transfer assets between FC and FCR to hinder the plaintiffs' ability to recover damages from FC.[6]  (Doc. 141, p. 32-42).

As an initial matter, plaintiffs' claim that Franck conspired to violate Florida's Uniform Fraudulent Transfer Act by moving assets between FC and FCR does not establish Franck committed a tortious act for purposes of satisfying § 48.193(1)(a)2. *See Brown v. Nova Info. Sys., Inc.*, 903 So. 2d 968, 969 (Fla. 5th DCA. 2005) ("Contrary to Nova's assertion that conspiracy to violate Florida's Uniform Fraudulent Transfer Act is a tort giving rise to long-arm jurisdiction, a fraudulent conveyance claim has been held not to be a tort for purposes of establishing personal jurisdiction under section 48.193(1)(b)"); *accord Edwards v. Airline Support Grp., Inc.*, 138 So. 3d 1209, 1211-12 (Fla. 4th DCA 2014) ("Because a person is not 'liable' for receipt of a fraudulent transfer under section 726.108, we hold a fraudulent transfer is not a 'tortious act' under Florida's long-arm statute."); *Clement v. Lipson*, 999 So. 2d 1072, 1076 (Fla. 5th DCA 2008) ("The count seeking to void allegedly fraudulent transfers is not an independent tort upon which long-arm jurisdiction can be exercised."); *see also Beta Real Corp. v. Graham*, 839 So.2d 890,

---

[6] Fraudulent transfer claims under Florida law arise under the Florida Uniform Fraudulent Transfers Act ("FUFTA"), Fla. Stat. § 726.101, et seq.  Under § 726.105, the plaintiff must show "(1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due."  *Nationsbank, N.A. v. Coastal Utils., Inc.*, 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002).

891-92 (Fla. 3d DCA 2003) (concluding recipient of fraudulent transfer did not commit "tortious act").

Plaintiffs next contend Franck "meets the long-arm statute requirement as he operates, conducts, engages in, or carries on a business in the State of Florida in both an individual and managing capacity[.]"  (Doc. 310, p. 9).  Franck's only contact with Florida as an individual, however, involved the loaning of money to FC and FCR under the loan agreement.  And plaintiffs have not shown their causes of action arise from Franck's execution of the loan agreement.  Franck, James Green, and FC entered into the loan agreement in November 2010, nearly two years before plaintiffs filed this action and over two years before FCR began operating Fisherman's Corner Restaurant.  The loan agreement, therefore, does not provide a basis for exercising personal jurisdiction over Franck under Florida's long-arm statute.[7]

---

[7] In addition, loaning money to a company in Florida does not create the minimum contacts necessary to exercise personal jurisdiction over the lender under the Due Process Clause.  *See Alan Richard Textiles, Ltd. v. Vertilux, Inc.*, 627 So. 2d 529, 530 (Fla. 3d DCA 1993)("[A] contract alone was not sufficient to establish minimum contacts with the forum state so as to allow the out-of-state party to be sued in the forum state.") (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).  Although Franck personally received checks from FC and FCR, under the loan agreement and Florida law, the payments were made in Texas.  (Doc. 299-3, p. 19) (FC "promises to pay to the order of [Franck], at [Franck's] offices located at 82 Driftoak Circle, The Woodlands, Texas 77381 or at such other place as [Franck] may from time to time designate to [FC] in writing[.]"); *see also Tomac of Fla., Inc. v. Gunn's Quality Glass & Mirror, Inc.*, 17 So. 3d 320, 321 (Fla. 4th DCA 2009) ("When a contract is silent on where payment is to be made, a presumption arises that payment is to be made where the creditor is located.").  Thus, the loan agreement between Franck and the companies did not require him to engage in any activity within Florida.

Case No. 3:12cv521-MCR-CJK

In a somewhat related contention, plaintiffs assert:

> [T]hrough the line of credit and security interest that was held against [FC] and its property, this would technically place [Franck] in the shoes of lienholder as to the property of [FC] in Florida. Therefore, it is arguable Section 48.193(1)(a)(3) is also applicable for asserting personal jurisdiction over [Franck].

(Doc. 310, p. 9-10).   Again, plaintiffs have failed to establish their causes of action arise from the act of "owning, using, possessing, or holding a mortgage or other lien on any real property within this state."   In addition, this provision of the long-arm statute is limited to liens held on *real property*.   Based on the materials before the court, plaintiffs have not demonstrated Franck's security interest extends to real property.

The purported causes of action involving Franck center upon the creation of FCR and the execution of the Asset Purchase Agreement between FC and FCR. Although Franck indirectly has an ownership interest in FCR, without more, a nonresident's ownership of a company operating in Florida is insufficient to establish personal jurisdiction under § 48.193.   *See Schwartzberg v. Knobloch*, 98 So. 3d 173, 181 (Fla. 2d DCA 2012) ("Ownership of a resident subsidiary corporation by an out-of-state parent corporation, without more, has been repeatedly deemed insufficient to meet the requirements of section 48.193.   The same rule applies to nonresident individual shareholders of corporations resident in Florida.") (quotations and citations omitted).

Franck also argues Florida's "corporate shield doctrine" protects him from being sued in his individual capacity. (Doc. 309, p. 4-5). "Under that doctrine, 'acts of a corporate employee performed in his corporate capacity do not form the basis for jurisdiction over the corporate employee in his individual capacity.'" *Rensin v. State, Office of Att'y Gen., Dep't of Legal Affairs*, 18 So. 3d 572, 574 (Fla. 1st DCA 2009) (*quoting Doe*, 620 So. 2d at 1006). "The rationale behind the corporate shield doctrine is that it may be unfair to force an individual to defend an action filed against him personally in a forum with which his only relevant contacts are acts performed totally outside the forum state and not for his own benefit but for the exclusive benefit of his employer." *Kitroser v. Hurt*, 85 So. 3d at 1088. The doctrine "also applies to a nonresident who acts in a representative capacity on behalf of a limited liability company." *Schwartzberg*, 98 So. 3d at 181 (*citing Stomar, Inc. v. Lucky Seven Riverboat Co., L.L.C.*, 821 So. 2d 1183, 1187 (Fla. 4th DCA 2002)).[8]

If, however, the nonresident corporate officer directs "fraud or other intentional misconduct" at parties in Florida, such officer can be subject to personal

---

[8] In addition, § 605.0304, Fla. Stat., provides: "A debt, obligation, or other liability of a limited liability company is solely the debt, obligation, or other liability of the company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager." Likewise, § 605.04093, Fla. Stat., provides: "A manager in a manager-managed limited liability company or a member in a member-managed limited liability company is not personally liable for monetary damages to the limited liability company, its members, or any other person for any statement, vote, decision, or failure to act regarding management or policy decisions by a manager in a manager-managed limited liability company or a member in a member-managed limited liability company[.]"

Case No. 3:12cv521-MCR-CJK

jurisdiction. *Doe*, 620 So. 2d at 1006 n.1. The fraud and intentional misconduct exception, though, has not been interpreted to include fraudulent transfers. *See Rensin*, 18 So. 3d at 575-76 (discussing the development of the fraud and intentional misconduct exception to the corporate shield doctrine and noting that, where jurisdiction was found, "the plaintiff produced evidence of the specific conduct on the part of the corporate officer that constituted a fraud or an intentional tort. In each case, the nonresident corporate officer personally and intentionally engaged in the tortious conduct and the specific conduct of the nonresident corporate officer was calculated to inflict a direct injury upon a resident of Florida."); *Clement*, 999 So. 2d at 1075-76 (holding personal jurisdiction over defendants was not proper due to corporate shield doctrine and noting the "count seeking to void allegedly fraudulent transfers is not an independent tort upon which long-arm jurisdiction can be exercised"); *State, Office of Att'y Gen., Dep't of Legal Affairs v. Wyndham Intern., Inc.*, 869 So. 2d 592, 598-600 (Fla. 1st DCA 2004) (finding violation of the Florida Deceptive and Unfair Trade Practices Act constitutes exception to the corporate shield doctrine and noting a "deceptive or unfair trade practice constitutes a somewhat unique tortious act"); *XL Vision, LLC. V. Holloway*, 856 So. 2d 1063, 1065-66 (Fla. 5th DCA 2003) (finding president of limited liability company not protected by corporate shield doctrine when plaintiff alleged president made fraudulent misrepresentations); *Byron v. Marine Carriers (USA), Inc.*, 668 So. 2d

273, 274 (Fla. 1st DCA 1996) (holding corporation president accused of making defamatory telephone call not protected by corporate shield doctrine because alleged causes of actions "are all based upon the alleged intentional torts" of the president). Because Franck participated in the formation of FCR and the execution of the Asset Purchase Agreement as a corporate representative of PKI, and fraudulent transfers are not torts under Florida law, he is protected by the corporate shield doctrine and not subject to personal jurisdiction in Florida. *See Carter v. Estate of Rambo*, 925 So. 2d 353, 356 (Fla. 5th DCA 2006) ("Under the corporate shield doctrine, any activity in one's capacity as a corporate officer or director is exempted from consideration in support of the exercise of long-arm jurisdiction over said officer or director.").

Plaintiffs nevertheless argue they should be able to "pierce the corporate veil" and subject Franck to the jurisdiction of this court based on the actions of PKI and its subsidiary FCR. (Doc. 310, p. 17-20). *See Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998) ("The alter ego theory of long-arm jurisdiction exists as a limited exception to the general, two-step process for establishing long-arm jurisdiction as set forth in *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). Under the alter ego theory, the complaint only must allege facts sufficient to pierce the corporate veil of the resident corporation."); *see also Gubanova v. Miami Beach Owner, LLC*, No. 12-22319-CIV, 2013 WL 6229142, at

*3-4 (S.D. Fla. Dec. 2, 2013) ("As an alternative to alleging jurisdiction under Florida's long-arm statute, however, a plaintiff may establish personal jurisdiction under a piercing-the-corporate-veil theory. . . . [A] court may exercise jurisdiction where the non-resident corporation is merely the alter ego of the resident entity."). "As is true in most jurisdictions, Florida law holds that courts should generally be reluctant to pierce the corporate veil." *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1064 (6th Cir. 1995) (*citing Acquisition Corp. of Am. v. Am. Cast Iron Pipe Co.*, 543 So. 2d 878, 882 (Fla. 4th DCA 1989)).

"To 'pierce the corporate veil' three factors must be proven: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (*citing Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998)); *see also Merkin v. PCA Health Plans of Fla., Inc.*, 855 So. 2d 137, 141 (Fla. 3d DCA 2003) ("The corporate veil may be pierced if the plaintiff can prove 'both that the corporation is a "mere instrumentality" or alter ego of the defendant, and that the defendant engaged in "improper conduct" in the formation or use of the corporation.'") (*quoting Bellairs*

*v. Mohrmann*, 716 So. 2d 320, 323 (Fla. 2d DCA 1998)).  The corporate veil will not be pierced unless it is shown that "the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them. . . . In the absence of pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability with respect to a transaction that was, in truth, personal and not corporate, [a plaintiff] cannot be heard to question the corporate existence but must confine his efforts to the remedies provided by law for satisfying his judgment *from the assets of the corporation*, if any can be found." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1119-20 (Fla. 1984) (*quoting Riley v. Fatt*, 47 So. 2d 769, 773 (Fla. 1950)).

Plaintiffs claim Franck loaned money to FC and FCR "in a manner which comingled personal and business assets" and he "dominated and controlled the relevant corporations to the extent that the corporation[s] had no independent existence." (Doc. 310, p. 18-19).  But the fact that Franck was the sole member of PKI and PKI was the sole member of FCR does not necessarily justify piercing the corporate veil because "[t]he law is clear that the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil."  *Gasparini*, 972 So. 2d at 1055 (Fla. 3d DCA 2008); *see also Sykes*, 450 So. 2d at 1120 ("The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion

that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally.") (*quoting Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So. 2d 21, 23 (Fla. 1955)); Fla. Stat. § 605.0304(2) ("The failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is not a ground for imposing liability on a member or manager of the company for a debt, obligation, or other liability of the company."). Moreover, Franck's personal loans to FCR do not justify piercing the corporate veil. *See Hilton Oil Transport v. Oil Transport Co.*, 659 So. 2d 1141, 1152 (Fla. 3d DCA 1995) (finding that defendant who made personal loans to corporation not evidenced by promissory notes operated corporation "in a loose and haphazard manner" but imposition of personal liability was not justified).

In addition, plaintiffs claim Franck—acting through PKI—incorporated FCR and executed the Asset Purchase Agreement for an improper purpose—to hinder the plaintiffs' ability to recover potential damages from their previous employer, FC. Although plaintiffs accuse Franck of "intentionally structur[ing] these corporations and holding companies in order to insulate himself from personal liability[,]" that is a primary purpose of forming a limited liability company. *See Dinuro Investments, LLC v. Camacho*, 141 So. 3d 731, 742 (Fla. 3d DCA 2014) ("limited liability is one of the paramount reasons for forming an LLC").

Furthermore, because plaintiffs have failed to show Franck's actions have caused them any injury, they cannot satisfy the third factor necessary to pierce the corporate veil. *See Gasparini*, 972 So. 2d at 1055 (noting the plaintiff must show "the fraudulent or improper use of the corporate form caused injury to the claimant"). Plaintiffs make only the conclusory assertion that Franck's "improper and fraudulent acts have caused direct and proximate injury to Plaintiffs." (Doc. 310, p. 20). Franck, however, is not liable for plaintiffs' underlying wage claims and had no control over the restaurant at the time the claims arose. Plaintiffs have not obtained a judgment against any defendant for the wage claims and have not asserted such a judgment would be unrecoverable from FC or FCR.

Plaintiffs' cause of action does not support the exercise of jurisdiction over Franck. Plaintiffs seem not to recognize that "[a] fraudulent conveyance action is simply another creditors' remedy. It is either an action by a creditor against a transferee directed against a particular transaction, which, if declared fraudulent, is set aside thus leaving the creditor free to pursue the asset, or it is an action against a transferee who has received an asset by means of a fraudulent conveyance and should be required to either return the asset or pay for the asset (by way of a judgment and execution)." *Yusem v. South Fla. Water Mgmt. Dist.*, 770 So. 2d 746, 749 (Fla. 4th DCA 2000). Plaintiffs have not alleged Franck is the recipient of any fraudulently transferred asset. Regardless of whether Florida law recognizes a cause

of action against a nontransferee for conspiracy to commit a fraudulent transfer, *compare Danzas Taiwan, Ltd. v. Freeman*, 868 So. 2d 537, 538 (Fla. 3d DCA 2003) (finding "there is no cause of action against Danzas Taiwan for conspiracy to engage in fraudulent transfers" because "[t]here is no allegation that Danzas Taiwan is a recipient of fraudulently conveyed assets") *and In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 841 (Bankr. M.D. Fla. 2011) (noting "that Florida law does not recognize a cause of action against a non-transferee for conspiracy to commit a fraudulent transfer") *with In re Fundamental Long Term Care, Inc.*, 512 B.R. 690, 705-06 (Bankr. M.D. Fla. 2014) ("non-transferor or non-transferee must benefit from a fraudulent transfer to be liable for civil conspiracy"), that cause of action does not support piercing the corporate veil or the exercise of jurisdiction over Franck in this case. Franck is not subject to specific long-arm jurisdiction in this forum.[9]

General Personal Jurisdiction

Plaintiffs claim jurisdiction over Franck is also proper under Fla. Stat. § 48.193(2), which provides that a "defendant who is engaged in substantial and not

_____

[9] Although not mentioned by the plaintiffs, the court is cognizant that "Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, [if] at least one act in furtherance of which is committed in Florida." *AXA Equitable Life Ins. Co. v. Infinity Financial Group, LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009). The cases applying this theory of personal jurisdiction, however, involve a conspiracy to commit a tort. *See id.* (conspiracy to commit fraud); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So.2d 582, 584-85 (Fla. 2000) (conspiracy to violate FDUTPA); *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 734 (Fla. 3d DCA 2006) (conspiracy to commit fraud); *Wilcox v. Stout*, 637 So. 2d 335, 336 (Fla. 2d DCA 1994) (conspiracy to commit tortious interference with business relationship). Because a fraudulent transfer claim is not a tort, this line of cases is distinguishable.

Case No. 3:12cv521-MCR-CJK

isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  "The reach of [§ 48.193(2)] extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (*citing Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999)). "General jurisdiction requires far more wide-ranging contacts with the forum state than specific jurisdiction, and it is thus more difficult to establish." *Canale v. Rubin*, 20 So. 3d 463, 466 (Fla. 2d DCA 2009).  "[F]or example, a corporation with many facilities or activities in Florida has purposefully directed its activities at this state and therefore is subject to suit here on any claim." *Id.* (*citing Christus St. Joseph's Health Sys. V. Witt Biomedical Corp.*, 805 So. 2d 1050, 1052 (Fla. 5th DCA 2002)); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19, 187 L. Ed. 2d 624 (2014) (noting the possibility "that in an exceptional case, . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State").

Here, Franck can hardly be described as having "engaged in substantial and not isolated activity within this state."  Plaintiffs have produced no evidence Franck was ever physically present in Florida.  Although he has ownership interests in Green

Acres and, indirectly, in FCR, he is not engaged in the day-to-day operations of the companies. *See Schwartzberg*, 98 So. 3d at 182 (Fla. 2d DCA 2012) ("[B]ecause the Appellants' only 'activity' in Florida is their indirect ownership interests in the nursing home's operating and management companies and because, as discussed below, they are not engaged in the day-to-day operations of the nursing home, we conclude that Ms. Knobloch did not establish that the Appellants are engaged in substantial and not isolated activity in Florida."); *Carter*, 925 So.2d at 356 (recognizing that "any activity in one's capacity as a corporate officer or director is exempted from consideration in support of the exercise of long-arm jurisdiction over said officer or director" and finding no basis for personal jurisdiction over the appellant solely because "he signed business reports as a managing member of an LLC in his representative capacity").

In sum, Franck's connections with Florida are not so substantial that he can be described as "at home" in the state and subject to suit on any claim. *Cf. Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.") (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 317, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Thus, general personal

jurisdiction has not been established.  Because plaintiffs have failed to show that the exercise of jurisdiction over Franck is appropriate under any provision of Florida's long-arm statute, the motion to dismiss for lack of personal jurisdiction should be granted.

Accordingly, it is respectfully RECOMMENDED:

1.     That defendant Victor Franck's Motion to Set Aside Clerk's Default and Motion to Dismiss Defendant Victor C. Franck from Third Amended Complaint for Lack of Personal Jurisdiction (doc. 296) be GRANTED.

2.     That the clerk's default be VACATED.

3.     That plaintiffs' claims against defendant Franck be DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

At Pensacola, Florida, this 26th day of August, 2016.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 3:12cv521-MCR-CJK

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties.   A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.